08-1207-cr
United States v. Brown (Marks)

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: December 10, 2009                    Decided: October, 19, 2010)

Docket No.08-1207-cr

UNITED STATES OF AMERICA,

       *Appellee*,

       v.

NATHAN BROWN, RICHARD ROSS JR., TOMMY HARDY,

       *Defendants,*

CHAD MARKS,

       *Defendant-Appellant*.


Before: LEVAL, HALL, and LIVINGSTON, *Circuit Judges*.

On appeal, defendant-appellant argues that the district court erred by refusing to hear his ineffective assistance of counsel claim, raised after his conviction but before sentencing, until after he had been sentenced. For the reasons stated below, we agree.

Affirmed in part, vacated in part, and remanded.

> JILLIAN S. HARRINGTON, Monroe Township, New Jersey, *for Defendant-Appellant*.
>
> JOSEPH J. KARASZEWSKI, Assistant United States Attorney, *for* Kathleen M. Mehltretter, United States Attorney, Western District of New York, Buffalo, New York, *for Appellee United States of America*.

HALL, Circuit Judge:

On appeal, defendant-appellant Chad Marks argues, *inter alia*, that the district court erred by refusing to hear his ineffective assistance of counsel claim, raised after his conviction but before sentencing, until after he had been sentenced. For the reasons stated below, we agree.

## BACKGROUND

We recount only such facts as are necessary to explain our decision. Marks appeals from a judgment of conviction of the United States District Court for the Western District of New York (Larimer, *J.*), entered following a jury trial. Marks was found guilty of five counts of various drug-trafficking charges, and two counts of possessing a specific firearm in furtherance of two of the charged drug trafficking crimes in violation of 18 U.S.C. § 924(c). The district court sentenced Marks principally to concurrent 10-year terms of imprisonment on each drug trafficking conviction, a 5-year term on the first § 924(c) conviction, and a 25-year term on the second. Marks was thus sentenced to an aggregate 40 years of imprisonment. Judgment was entered on March 12, 2008.

Between February 2003 and January 2004, the parties engaged in plea negotiations. In late January 2004, the Assistant United States Attorney ("AUSA") originally assigned to the case, John Kelly, was transferred to Washington, D.C. Upon learning of his planned transfer, AUSA Kelly informed Marks's counsel, Donald Thompson, "on at least two occasions that, once a new prosecutor assumed responsibility for the case, any future plea offers would likely be more onerous to Marks." Subsequent to AUSA Kelly's transfer, AUSA Everardo Rodriguez assumed responsibility for the case.

In or around May 2004—although, as discussed below, Marks asserts he was unaware of this until after his trial—AUSA Rodriguez offered Attorney Thompson a plea bargain to dispose

2

of Marks's case (the "20-year Plea Offer"). The principal component of that deal required Marks to serve a 20-year term of imprisonment.[2] AUSA Rodriguez advised Attorney Thompson that Marks faced significant sentencing exposure if he did not plead guilty and that the exposure would increase if Marks were convicted of two potential firearms charges that could be brought under 18 U.S.C. § 924(c).

According to Marks, he was unaware of the government's 20-year Plea Offer, and therefore did not enter a guilty plea.[3] In September 2004, therefore, as AUSA Rodriguez had suggested would happen, the grand jury returned a superseding indictment against Marks, adding the two § 924(c) counts—possession of a specific firearm in furtherance of two of the drug trafficking crimes alleged in the superseding indictment. Marks was arraigned on that superseding indictment a few days later.

Trial was scheduled to begin on June 5, 2006, though for reasons not clear from the record, trial commenced on June 13. On June 7, Marks filed a motion seeking an order (1) requesting permission to enter a plea of guilty pursuant to the terms of a previously-offered plea

---

[2] AUSA Rodriguez has confirmed that he extended this offer. In his affidavit filed some months later opposing Marks's post-trial motion requesting permission to enter a plea of guilty pursuant to the terms of a different, previously-offered plea agreement and directing the government to make a U.S.S.G. § 5K1.1 motion for a downward departure, Rodriguez attested:

> I explained to Donald Thompson that Chad Marks had significant sentencing exposure if he did not plead. I told Thompson that . . . there were at least two viable 924(c) counts that could be brought against him . . .. I then suggested to Thompson that Marks take a plea to a straight 20 years (without any additional reduction for cooperation). . . . [W]hen I proposed the straight 20 year plea to him . . . I specifically pointed out to Thompson that Marks had significant exposure from at least two 924(c) counts . . ..

[3] We leave to further fact-finding the nature and extent of the communications, if any, between Marks and Attorney Thompson regarding AUSA Rodriguez's 20-year Plea Offer.

3

agreement made to him during plea negotiations with AUSA Kelly prior to January 2004 and (2) directing the government to make a U.S.S.G. § 5K1.1 motion. *See* footnote 2, *supra*. The following day, the court met with the parties and stated that it was not inclined to grant Marks's motion but would defer consideration until after trial. Two weeks later, the jury returned guilty verdicts against Marks on all counts.

In November 2006, Marks's counsel renewed the motion made before trial requesting permission to enter a plea of guilty pursuant to the terms of a plea offer from AUSA Kelly and directing the government to file a § 5K1.1 motion (the "Renewed Motion"). In his affidavit in opposition to the Renewed Motion, AUSA Rodriguez attested, *inter alia*, that prior to presenting the § 924(c) charges to the grand jury, he had extended to Attorney Thompson the 20-year Plea Offer. According to Marks, it was at this point that he first learned of the 20-year Plea Offer that Rodriguez had discussed with Attorney Thompson.

In January 2007, Judge Larimer sent a letter to the parties in which he stated:

> An[] issue that needs to be addressed is whether we need a factual hearing to resolve the [Renewed M]otion. There are certainly matters of record that will assist the [c]ourt in deciding the motion, but some of the matters set forth in both the defense papers and the [g]overnment's papers relate to conversations among Mr. Rodriguez, Mr. Thompson, and Mr. Marks. Former [AUSA] John Kelly was also referenced. . . .
>
> I believe it may be necessary to have a hearing . . ..

Letter from David G. Larimer, U.S.D.J., W.D.N.Y, to Everardo A. Rodriguez, Esq., Assistant U.S. Attorney, USAO, W.D.N.Y., and Donald M. Thompson, Esq. (Jan. 25, 2007) (reproduced in Appendix A to Post-Oral Argument Brief of Defendant-Appellant (Jan. 6, 2010)). In the letter, the district court also referred to "several letters written by Marks, *pro se*[.] [I]t appears that Marks is now claiming ineffective assistance of counsel." *Id*. It is not clear from the record

4

to which letters the court is referring. A letter from Attorney Thompson, dated December 2006, suggests that the court may have referred to "Marks's letters to Magistrate Judge Payson concerning the status of his representation . . .." Letter from Donald M. Thompson, Esq. to David G. Larimer, U.S.D.J., W.D.N.Y. (Dec. 4, 2006) (reproduced in Appendix A to Post-Oral Argument Brief of Defendant-Appellant (Jan. 6, 2010)).

In February 2007, at a hearing to address Marks's Renewed Motion, Marks filed a *pro se* petition for habeas relief pursuant to 28 U.S.C. § 2241 alleging ineffective assistance of counsel based on Attorney Thompson's failure to tell him of the 20-year Plea Offer that AUSA Rodriguez had made (the "Petition"). The court did not hear argument on the Renewed Motion that day because it first needed to determine whether, in light of a letter it had received from Marks in late January, a hearing was necessary to address Marks's ineffective assistance claims. The court indicated that it was inclined to consider on submission the Renewed Motion, which was fully briefed, before addressing whether Marks required new counsel. In response, Attorney Thompson noted that:

> Marks' allegations relating to ineffective assistance revolve largely around either this [Renewed M]otion or the subject matter to which the motion relates [*i.e.*, counsel's conduct during plea negotiations]. So to the extent that the [c]ourt addresses the motion, . . . that might complicate things or raise another issue, if the ineffective attorney, if you will, . . . is still involved at the time the [c]ourt is ruling on the motion -- Mr. Marks contends -- is the basis for the ineffectiveness.

Feb. 15, 2007 Hearing Tr. 6. The district court acknowledged the relationship between the pending Renewed Motion and Marks's ineffective assistance claim, saying "Marks' letter . . . does relate, in part, to the motion that's pending before me . . .." *Id*. The court later asked Attorney Thompson whether "you have a conflict at this point that would preclude you from representing Mr. Marks." *Id*. 7 Thompson replied, "I think I do. . . . [I]t appears that given the

5

allegations . . . [I] may be a witness . . . and as a consequence, would not appropriately be able to continue as an advocate." *Id*. 7-8.

In March 2007, the court denied both Marks's Petition and his Renewed Motion seeking enforcement of an earlier plea offer that was discussed with AUSA Kelly. With respect to the Petition, the court noted that it was an "improper . . . attempt[] to raise arguments that should be presented by way of a motion under 28 U.S.C. § 2255 following sentencing." "Marks's ineffective-assistance claim should be brought, if at all, by way of a motion under § 2255, *after* Marks is sentenced, not before." Later that month, Marks filed *pro se* an interlocutory notice of appeal challenging the denial of his Petition.

In April 2007, having been unsuccessful in advancing his ineffective assistance claim in colloquy before the district court, Marks requested new counsel for sentencing. The court granted this request and relieved Attorney Thompson of representing Marks. Marks then immediately moved *pro se* for reconsideration of the Petition. Later that month, the district court denied that motion for reconsideration. In May 2007, the court appointed new counsel. Marks's new counsel took no further action to renew yet again Marks's motion for reconsideration of the Petition.

Meanwhile, in August 2007, this Court dismissed Marks's interlocutory appeal "without prejudice to Appellant's raising his claims in his direct criminal appeal after sentencing or in a subsequent § 2255 motion." On the record before us at the time, we determined *nostra sponte*, "that Appellant's appeal lacks an arguable basis in law or fact, because the district court acted within its discretion in concluding that the challenge was better addressed on a post-conviction motion pursuant to 28 U.S.C. § 2255."

On March 4, 2008, the court sentenced Marks to 40 years' imprisonment. This appeal followed.

Subsequent to oral argument, we ordered post-argument briefing on two matters. The first was clarification of the timing of Marks's motion for reconsideration of his *pro se* Petition challenging Attorney Thompson's effectiveness and seeking permission to enter a plea of guilty pursuant to the terms of the 20-year Plea Offer from AUSA Rodriguez. The second was whether the district court erred when it refused to address Marks's ineffective assistance claim prior to imposing sentence.

## DISCUSSION

Marks, both through counsel and *pro se*, presents a number of arguments on appeal. We address three of those arguments here.

### *Marks's Motion Seeking to Force the Government to Move for a Downward Departure*

First, Marks argues that the district court erroneously denied his motions seeking to force the government to move for a downward departure. This claim is based on Marks's belief that the government should be required to allow him to plead guilty pursuant to the terms of an unspecified plea offer previously made to him during plea negotiations with AUSA Kelly. While there is evidence that a variety of possible dispositions were discussed between Attorney Thompson and AUSA Kelly before January 2004, when AUSA Kelly left for Washington, D.C., on the record presented we see no evidence of an agreement. The district court's finding to that effect is not clearly erroneous. Consequently, there is no basis to enforce the terms of any particular plea offer that may have been discussed during that time. Because Marks did not have a cooperation agreement with the government, we review his claim only to determine whether the government's refusal to file a motion for a downward departure was based on an

7

unconstitutional motive.  *See Wade v. United States*, 504 U.S. 181, 185-86 (1992).  The district court properly found that Marks's motions seeking to force the government to recommend a downward departure were meritless because no plea agreement requiring such a motion was ever entered and Marks alleged no unconstitutional motive for the government declining to recommend a downward departure.

### *Marks's Mandatory Minimum Sentence Under* **Williams**

The second argument we address is Marks's claim that the district court erred by sentencing him to a consecutive mandatory minimum sentence of five years' imprisonment on Count 8 for use of a firearm in furtherance of the drug-trafficking charged in Count 1, pursuant to which Marks was subject to "a greater minimum sentence" than five years.  *See* 18 U.S.C. § 924(c)(1)(A).  Here, the district court determined that Marks's mandatory minimum sentence of five years' imprisonment on his § 924(c) conviction must run consecutively to his sentence on his narcotics conviction under 21 U.S.C. § 841(a)(1), even though the latter conviction carried a mandatory minimum of ten years' imprisonment.  *See* 21 U.S.C. § 841(b)(1)(A).  This ruling, though not objected to below, was plain error requiring a remand for resentencing.[4]  *See United States v. Williams*, 558 F.3d 166, 170 (2d Cir. 2009).  We therefore vacate the five-year sentence

---

[4] We are mindful that the United States has petitioned for a writ of *certiorari* in *Williams*, *see United States v. Williams*, 558 F.3d 166 (2d Cir. 2009), *petition for cert. filed*, 78 U.S.L.W. 3254 (U.S. Oct. 20, 2009) (No. 09-466), and that the Supreme Court has in fact granted *certiorari* in *United States v. Abbott*, 574 F.3d 203 (3d Cir. 2009), *cert. granted*, 130 S.Ct. 1284 (Jan. 25, 2010) (No. 09-479), and *United States v. Gould*, 329 F. App'x 569 (5th Cir. 2009), *cert. granted*, 130 S.Ct. 1283 (Jan. 25, 2010) (No. 09-7073), which also address mandatory consecutive sentencing under § 924(c).  Nevertheless, in the absence of any contrary authority from the Supreme Court, our existing precedents compel the conclusion that the imposition of a mandatory five-year consecutive sentence in the instant case was plain error.  We leave to the district court's discretion the decision of whether to await the Supreme Court's ruling on this issue before resentencing Marks on this count.

8

imposed on Count 8 and remand for resentencing.  In resentencing Marks, the district court of course retains discretionary authority to impose a consecutive sentence consistent with its responsibility under 18 U.S.C. § 3553.  *See United States v. Whitley*, 529 F.3d 150, 158 (2d Cir. 2008).

### *Ineffective Assistance Claim Raised Prior to Imposition of Sentence*

We turn now to whether the district court should have considered and decided, prior to imposing sentence, Marks's motion asserting ineffective assistance of trial counsel based on counsel's failure to convey the government's 20-year Plea Offer.[5]

### *Law of the Case*

As an initial matter, we are not precluded from revisiting our August 2007 decision denying Marks's interlocutory appeal "without prejudice to Apellant's raising his claims in his direct criminal appeal after sentencing or in a subsequent § 2255 motion."  As has been noted, on the record presented at that time, we determined *nostra sponte*, "that Appellant's appeal lacks an arguable basis in law or fact, because the district court acted within its discretion in concluding that the challenge was better addressed on a post-conviction motion pursuant to 28 U.S.C. § 2255."

---

[5] During oral argument, the question was raised whether this issue had been waived because, after new counsel had been appointed, he did not renew Marks's ineffective assistance of counsel claim that had previously been brought before the district court by way of Marks's *pro se* Petition and his *pro se* motion for reconsideration.  That is, new counsel did not renew the motion seeking yet a third bite at the apple.  As a preliminary matter, we conclude that new counsel need not have raised the issue before the district court in order to avoid waiving it, at least where, as here, the defendant was representing himself *pro se* between the time prior counsel had been relieved and new counsel was appointed, during which period the defendant, *pro se*, filed the motion for reconsideration and received the court's ruling thereon.

9

The law of the case doctrine "does not rigidly bind a court to its former decisions, but is only addressed to its good sense." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (quoting *Higgins v. Cal. Prune & Apricot Grower, Inc.*, 3 F.2d 896 (2d Cir. 1924) (L. Hand, J.)). "[T]he law of the case doctrine does not deprive an appellate court of discretion to reconsider its own prior rulings, even when the ruling constituted a final decision in a previous appeal." *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 149 (2d Cir. 1999). "While informing the court's discretion, law of the case 'does not limit the tribunal's power.'" *Id*. (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). Moreover, law of the case is "even less binding in the context of interlocutory orders." *Id*.; *see also Sussman v. Crawford*, 548 F.3d 195, 198 (2d Cir. 2008).

Upon our review of the record as augmented by post-argument briefing, we conclude for the reasons discussed below, and contrary to our August 2007 mandate, that the district court abused its discretion by requiring Marks's ineffective assistance claim to be brought in a post-conviction motion pursuant to 28 U.S.C. § 2255.

*Ineffective Assistance Claim Raised Prior to Imposition of Sentence*

The district court's oral and written statements addressing Marks's ineffective assistance claim indicate that the court considered sentencing a prerequisite to reviewing that claim. The government argues unconvincingly that given the Supreme Court's and this Court's general aversion to deciding ineffective assistance claims on direct review, "the district court's refusal to entertain Marks's motion before he was sentenced cannot be deemed an abuse of discretion." We disagree.

The legal standards applicable to Marks's ineffective assistance claim are well-established. A defendant's Sixth Amendment right to counsel is violated when he receives ineffective assistance. To prove such ineffective assistance, a defendant must show: (1) "that

10

counsel's representation fell below an objective standard of reasonableness"; and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).

"A defendant suffers a Sixth Amendment injury where his attorney fails to convey a plea offer" because "[d]efense counsel have a constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government." *Id*. As such, counsel's failure to convey a plea offer falls below an objective standard of reasonableness and thus satisfies *Strickland*'s first prong. *See id*. at 183 ("[T]here is no dispute that failure to *convey* a plea offer is unreasonable performance.") (citing *Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999) ("[T]here can be no doubt that counsel must always communicate to the defendant the terms of any plea bargain offered . . ..")). With respect to *Strickland*'s second prong, a defendant's statements that he would have accepted a plea offer "in combination with" "some objective evidence," such as "a significant sentencing disparity," is sufficient to support a prejudice finding. *Id*. at 182.

When ineffective assistance of counsel is first raised in a court of appeals on direct review of a conviction, it is often preferable for the court to decline to consider the claim, awaiting its presentation in a collateral proceeding. *See e.g.*, *United States v. Hasan*, 586 F.3d 161, 170 (2d Cir. 2009). "As the Supreme Court has noted, collateral review typically provides a far better opportunity for an evaluation of an ineffective-assistance claim than direct review, because a factual record focused on the defendant's claim can be developed in the district court, including by 'tak[ing] testimony from witnesses for the defendant and the prosecution and from the counsel alleged to have rendered the deficient performance.'" *United States v. Oladimeji*,

11

463 F.3d 152, 154 (2d Cir. 2006) (quoting *Massaro v. United States*, 538 U.S. 500, 504-05

(2003)).  When such a claim is raised on direct appeal we may choose to:

> (1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent 28 U.S.C. § 2255 petition; (2) remand the claim to the district court for necessary fact-finding; or (3) decide the claim on the record before us.

*Hasan*, 586 F.3d at 170 (internal quotation marks and alteration omitted).

We are perplexed by the assertion that a trial court must invoke an appellate court's

rubric and require a defendant to use his one § 2255 motion to raise an ineffective assistance

claim post-judgment, particularly when the district court is in a position to take evidence, if

required, and to decide the issue pre-judgment.  As a matter of first impression, we hold that

when a claim of ineffective assistance of counsel is first raised in the district court prior to the

judgment of conviction, the district court may, and at times should, consider the claim at that

point in the proceeding.[6]  We are mindful that district courts face competing considerations in

---

[6] Because Marks raised his ineffective assistance claim after the jury convicted him but before sentence was imposed, we agree with the district court that a habeas petition pursuant to 28 U.S.C. § 2241 was not "the proper vehicle" by which to advance his claim.  As discussed in more detail below, however, we do not agree with the district court that Marks was precluded from raising his ineffective assistance of counsel claim until after he was sentenced.  Instead, we hold that the proper procedural avenue for defendants who wish to raise ineffective assistance claims after conviction but prior to sentencing is a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33.  We note, moreover, that form should not be elevated over substance particularly where a federal court is dealing with a *pro se* litigant.  *See Castro v. United States*, 540 U.S. 375, 381-82 (2003) ("Federal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category.  They may do so in order to avoid an unnecessary dismissal, to avoid inappropriately stringent application of formal labeling requirements, or to create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal basis.") (citations omitted).  That being the case, the district court should have denominated Marks's § 2241 petition a Rule 33 motion, and it should have, at least in these circumstances, proceeded to reach the substance of the claim raised therein.  We recognize that under Rule 33 a defendant must bring a motion for new trial within 14 days of the verdict or finding of guilt, unless the court finds that the late filing was the product of "excusable neglect."  Fed. R. Crim. P. 45(b)(2).  Here, Marks asserts that he first found out about the 20-year Plea Offer in a post-

deciding whether it is appropriate to inquire into the merits of such claims prior to judgment, including principally the potential disruption of the proceedings, especially if the attorney against whom the complaint is directed continues at the time to represent the defendant. The decision to interrupt the pre-judgment proceedings to inquire into the merits of an ineffective assistance of counsel claim may depend on, among other things, whether the court would need to relieve the defendant's attorney, or in any event, to appoint new counsel in order to properly adjudicate the merits of the claim.

In this case, we have no trouble concluding that the district court should have considered Marks's claim prior to the imposition of the sentence. By late April 2007, the court had relieved Thompson as Marks's attorney, and at that point had no good reason to postpone inquiry into the merits of Marks's claim. Further supporting the appropriateness of considering the claim at that time are the facts that: (i) AUSA Rodriguez attested that he extended the 20-year Plea Offer to Attorney Thompson; (ii) when asked by the district court at an earlier April 2007 hearing to determine whether he would continue to represent Marks at sentencing, Attorney Thompson equivocated as to whether he communicated the 20-year Plea Offer to Marks, *see Pham*, 317 F.3d at 183; (iii) there was "a significant sentencing disparity" between the sentence to which Marks was exposed and the sentence contemplated by the 20-year Plea Offer, *see id.* at 182; and (iv) Marks stated consistently that he would have accepted a plea and was persistent in his

---

trial submission filed with the court in January 2007, approximately six months after the verdict. About a month later, at a hearing, Marks filed his *pro se* petition alleging ineffective assistance of counsel (although, as noted above, it appears the issue may have been raised earlier in letters he wrote to the district court). At the time, Thompson — the allegedly ineffective attorney — continued to represent Marks. On these facts, it is clear that Marks has a reasonable contention to be adjudicated by the district court that his failure to move within the time specified in Rule 33 was attributable to excusable neglect.

efforts to secure one, *see id.* These factors indicate the facial plausibility of Marks's ineffective assistance claim and militate against the district court's decision to postpone addressing Marks's claim until after it had imposed sentence.

The government argues, in sum, that if we hold the district court should have held an evidentiary hearing prior to sentencing, then future defendants will assert non-meritorious ineffective assistance claims between the time of conviction and sentencing. The government's argument does not alter the outcome of our analysis in this case. As previously noted, we decide only that a district court may, and in the specific circumstances should, consider the ineffective assistance claim prior to judgment. The district court thus erred in concluding that it was required to defer consideration of Mark's claim to a § 2255 motion.

If counsel were found not to have relayed to the defendant the government's 20-year Plea Offer and if the defendant demonstrated that he would have accepted the offer when it was made, the district court would be required to place the defendant in the position he would occupy had counsel been effective. That is, if counsel is determined to have been ineffective, equities require that the defendant be put in the same place he would have been but for counsel's ineffective assistance—*i.e.*, he should be given the opportunity to accept the never-communicated plea offer. *See United States v. Carmichael*, 216 F.3d 224, 227 (2d Cir. 2000) (citing *United States v. Morrison*, 449 U.S. 361, 364 (1981)) (holding that, where trial counsel provided ineffective assistance based on his failure to advise defendant whether to accept a plea offer, the "remedy is one that as much as possible restores the defendant to the circumstances that would have existed had there been no constitutional error. . . . [That is, to resentence] to the terms [defendant] would have received had he been given proper legal advice"); *see also United States v. Williams*, 372 F.3d 96, 110-11 (2d Cir. 2004) (discussing and applying *Carmichael*).

14

Conversely, if the court found counsel not to have been ineffective, then the court could have proceeded to sentence the defendant based on the jury's conviction.

Had the district court held a hearing, moreover, it would have created a record from which this Court could have decided the merits of the claim on direct appeal. Absent such a hearing, this Court's ability to address an ineffective assistance claim on direct appeal is decidedly limited.

## CONCLUSION

Because the record before this Court does not include all facts necessary to adjudicate Marks's claim of ineffective assistance of counsel, a point Marks concedes, we remand this case to the district court so that it may engage in further fact-finding, and, assuming Marks can show excusable neglect for his delay in filing his Rule 33 motion, *see* footnote 6, *supra*, decide his ineffective assistance claim in the first instance. Among the issues to be determined by the district court are whether Marks's counsel conveyed the 20-year Plea Offer to Marks, and whether Marks would likely have accepted that offer had it been made known to him. If the district court determines that counsel was ineffective and that Marks was prejudiced thereby, then the district court should resentence Marks in conformance with the 20-year Plea Offer.

We have considered appellant's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is AFFIRMED in part, VACATED in part, and the case is REMANDED to the district court for proceedings and resentencing consistent with this opinion.